**CITY OF ST. MATTHEWS, Appellant,**

v.

**Gilbert E. ROBERTS and Charles O. Cooley, Appellees.**

**Gilbert E. ROBERTS, Cross-Appellant,**

v.

**CITY OF ST. MATTHEWS, Cross-Appellee.**

Court of Appeals of Kentucky.

Feb. 16, 1973.

J. W. Jones, Louisville, for appellant and cross-appellee.

Edward T. Ewen, Jr., Marvin E. Jewell, Louisville, for appellees and cross-appellant.

PALMORE, Chief Justice.

This is a case of considerable procedural complexity. It began as a simple land condemnation proceeding brought by the appellant, City of St. Matthews, in the Jefferson County Court under KRS 58.140 and KRS 416.010 et seq. against the "unknown owners" of 19 vacant lots in a subdivision named Warwick Villa. After the value of the lots had been fixed by commissioners appointed for that purpose (KRS 416.020) and after the filing of warning order and guardian ad litem reports (CR 4.07, 17.03), judgment was entered and a commissioner's deed was executed conveying the lots to the city. The amount representing the value of the property condemned, as fixed by the judgment, was paid into court. Meanwhile, the city had acquired title to several other lots in the subdivision by direct purchase, in which its mayor had acted as intermediary by first purchasing the lots in his individual name and then transferring them to the city.

The condemnation judgment was entered on May 29, 1968. On April 4, 1969, the appellee and cross-appellant, Gilbert Roberts, moved to vacate the judgment and filed a supporting affidavit stating that he owned the condemned property by adverse possession and had been neither notified of the proceeding, given an opportunity to be heard, nor justly compensated. On May 5, 1969, he followed with a motion for permission to intervene and answer, supported by an affidavit asserting that he was the owner by adverse possession of eight of the lots in question and that at the time the action was commenced the city, its mayor, and the city attorney were well aware of his claim. At the same time Roberts tendered an intervening answer setting up his claim of ownership and alleging that all of the proceedings purporting to effect the condemnation were void. This tendered pleading specifically alleged that the city and its agents had been guilty of fraud on the court by failing to make him a party while knowing of his claim. On the same day, May 5, 1969, he filed a motion to set aside the order appointing commissioners to evaluate the property, the order directing payment of the money into court, and the commissioner's deed conveying the property to the city. (The tendered order attached to this motion calls also for setting aside the judgment, which was not mentioned in the motion itself).

On May 14, 1969, counteraffidavits were filed which in substance denied the allegations of fraud, and on May 23, 1969, purportedly in compliance with CR 4.15 (which requires an amendment when the name or residence of an unknown defendant is discovered "pending the action"), the city filed an amended complaint stating that since the institution of the proceedings it had learned the identities of various persons and charitable entities who were asserting or might have claims to the property. This pleading, filed without leave of court, named Roberts and the appellee Charles Cooley as among the newly discovered claimants but asked no relief except that process by summons or warning order be issued against all of such individuals.

On May 27, 1969, Cooley made his entry into the case by filing motions and an affidavit and tendering an order and intervening answer similar to those which had been filed by Roberts on May 5, 1969. Cooley's claim embraced seven of the lots in question (of which one was among the eight claimed by Roberts) and, as in the instance of Roberts, was based on adverse possession. Cooley's tendered answer also asserted fraud on the part of the city.

On June 5, 1969, the county court entered orders permitting Roberts and Cooley to intervene and filing the answers they had tendered.

The next substantive step in the proceeding is reflected by a written opinion of the county judge reciting that evidence had been presented by both sides on the question of whether the city through its officers had known that Roberts and Cooley were claiming title to some of the property it was condemning, but that since neither Roberts nor Cooley had been a "party" to the action before the judgment was entered they had no standing to attack it under CR 60.02. Cf. Mulligan v. First Nat'l Bank & Tr. Co. of Lexington, Ky., 351 S.W.2d 59, 62 (1961). (In the judgment now on appeal to this court the circuit court later concluded that Roberts and Cooley *were* parties because as *claimants* of the property they came within the ambit of "unknown *owners*.") By an order entered on July 11, 1969, the county court denied the motions to set aside the judgment and transferred the proceeding to the Jefferson Circuit Court under KRS 416.070 to determine the title claims of Roberts and Cooley.

■ At this point it may be helpful to consider the effect of a transfer under KRS 416.070. The specific language of the statute makes it clear that the controversy transferred is not between the condemnor and the claimants, but between conflicting claimants, and that the right of appeal from the county court judgment is not affected. Hence the resolution of a title dispute under KRS 416.070 reaches nothing but the proceeds payable under the county court judgment. Cf. Dickerson v. Goocey, 154 Ky. 685, 159 S.W. 539 (1913). The title acquired by the condemnor and the value it has been adjudged to pay can be contested only by an attack on the condemnation judgment itself. If it is void, it is subject to collateral attack. If it is not void it must be attacked directly, either by appeal or by a motion in the same proceeding (or an independent action in the same court) to vacate or modify it. See Campbell's Gdn. v. Breathitt Co. Bd. of Ed., 260 Ky. 145, 84 S.W.2d 61 (1935); Clay's Kentucky Practice, CR 60.02, 60.03 and Comments.

■ In this case there was no appeal from the condemnation judgment, nor was it directly attacked within 10 days after entry, as required by CR 59.05 to prevent its becoming final. Thus it remained open to challenge only by collateral attack in a separate proceeding (if it was void) or by direct attack in the county court under CR 60.02 or 60.03. In this respect the remedies of parties constructively served are the same as the remedies of parties personally served, a constructively summoned party having no special protection except that which is provided by CR 4.11. Clay's Kentucky Practice, Cr. 4.10 and Comments. This being so, the requirement of CR 4.15 that if the identity of an unknown defendant be "discovered . . . pending the action, the complaint shall be amended accordingly" certainly cannot be applicable after the judgment has become final. It is equally certain, therefore, that the amended complaint filed by the city was not necessary and could not have had the effect of reopening the final judgment theretofore entered on May 29, 1968, except upon the theory that it amounted to a consent. Since, however, the amended complaint purported to do no more than ask that new parties be summoned, it is not susceptible of such a construction.

Neither could the "intervening" answers of Roberts and Cooley, as such, have had the effect of opening the judgment for reconsideration. If they actually had any title to the property, they were already parties to the lawsuit as being among the "unknown owners" named as defendants. Obviously one who is a party to proceeding cannot "intervene." To say, particularly, that by the device of styling themselves intervenors Roberts and Cooley could relitigate matters theretofore concluded by a judgment binding upon them through constructive service would rupture the purpose of CR 4.10, which is that their rights

against the judgment shall be the same as if they had been personally served.

Returning now to the field of events, we see that what the county court actually did was to treat these motions by Roberts and Cooley, and their intervening answers, as tantamount to CR 60.02 motions to vacate the judgment, and the propriety of its having so treated them is not questioned. An appeal by Roberts from the order of July 11, 1969, denying the motions to set aside the judgment was lodged in the Jefferson Circuit Court on August 7, 1969. Cooley, however, did not appeal to the circuit court, and he therefore is bound by the county court judgment fixing the value of the condemned property and transferring it to the city.

At this stage the case in the circuit court had two aspects. Phase 1 was the issue of whether Roberts and Cooley had valid claims to the proceeds. Phase 2 was whether Roberts was entitled to have the judgment set aside pursuant to his CR 60.02 motion and relitigate the valuation of the lots found to be owned by him.

Now enters phase 3, an independent action filed by Roberts in the circuit court on November 17, 1969, against the city and various other known and unknown defendants to quiet his title (cf. KRS 411.120) not only to the lots theretofore involved in the county court proceeding but also a number of the lots the city had acquired by purchase through its mayor. Again the basis of Roberts' asserted title was adverse possession, and he claimed that the deeds to the city from the mayor were void under KRS 61.270, which provides that an officer of a fourth-class city may not become "directly or indirectly interested as agent, principal or surety in any contract with the city . . . and the contract, if entered into while he is in office, shall be void." In due course the city filed an answer denying the essential allegations of this complaint, following which the circuit court entered an order consolidating the proceedings.

The case was referred to a commissioner to hear and report on the question of whether Roberts and Cooley on March 24, 1967, had acquired title by adverse possession to the condemned lots claimed by them. After conducting a full hearing the commissioner found and reported that neither Roberts nor Cooley had possessed the property in such manner and for such continuous length of time as to acquire title by adverse possession. The orders of referral had not directed him to consider the issue of fraud raised in the county court under CR 60.02, and he made no finding in that respect. Both Roberts and Cooley filed exceptions to the report in which they claimed, among other things, that they were entitled to judgment by default on the issue of their title by adverse possession. The chancellor then entered findings of fact, conclusions of law, and an extensive opinion which formed the basis of the judgment now on appeal.

The judgment declares Roberts the owner of the eight lots claimed by him in the condemnation proceeding, reverses the county court order overruling his CR 60.02 motion, and sets aside the condemnation judgment assessing their value and directing their transfer to the city, and it dismisses Roberts' claim to the lots the city had acquired by purchase through its mayor. The city appeals and Roberts cross-appeals from this phase of the judgment.

The portion of the judgment pertaining to Cooley is ambiguous on its face but can be construed with certainty when considered in the light of the chancellor's findings, conclusions and opinion. It reads as follows:

"Charles O. Cooley is adjudged to have been the owner by adverse possession of Lots 26, 28, 30, 32 and 34 of Block 4 in the aforesaid Warwick Villa Subdivision as of March 24, 1967, and is now the owner of said lots; however, the effect of the judgment of the County Court as it affects the title of these lots, not being before this Court, the Court makes no ruling thereon."

Although literally the foregoing section of the judgment says that Cooley "is now the owner of said lots," it means that he is entitled to the proceeds that had been paid for them pursuant to the condemnation judgment, that being the inescapable import of the following passage from the chancellor's findings of fact, conclusions of law and opinion:

"It should be noted that this Court has ruled that said judgment should be set aside as to Roberts only, for further proceedings affecting the lots he claims therein (and hereto for herein is determined the owner). This court is unable to afford such relief to Cooley inasmuch as he has not appealed from the order denying him relief under CR 60.02."

As to Cooley, therefore, it is clear that the county court judgment transferring the lots to the city and fixing the amount of compensation remains in full force and effect.

■ The city in its appeal attacks the ambiguous portion of the chancellor's judgment declaring that Cooley "is now the owner of the lots." Cooley, on the other hand, construing this language to mean that he is now the owner of the lots, has not cross-appealed. As we have said, however, the judgment simply cannot have such a meaning, and if it did, it would be necessary to reverse it in that respect. It is our opinion that the order of the county court denying Cooley's CR 60.02 motion to vacate the condemnation judgment became conclusive upon his failure to appeal from it, and that the chancellor was correct in so holding.

■ Whether right or wrong, the adjudication of Cooley's entitlement to the proceeds from the lots claimed by him does not in any way aggrieve the city, and for that reason the city has no standing to attack it. Nor, in fact, was there a justiciable issue between Cooley and the city in the circuit court. So far as the condemned lots were concerned, in the circuit court Cooley was involved only in what we have referred to as phase 1, the transfer order under KRS 416.070. As mentioned earlier in this opinion, from a careful reading of that statute its purpose and effect are unmistakable. When the judgment of condemnation becomes final the condemnor's interest in the litigation is at an end, subject of course to any subsequent attack upon the judgment. A dispute between claimants of the title does not affect the condemnation, but only the distribution of the proceeds, in which the condemnor has no interest. If the owner or owners of the property are unknown but are before the court by constructive process, they are bound by the judgment the same as if they had been personally served and are relegated to the protection of CR 4.11, under which they may assert their claims against the proceeds paid into court by the condemnor. See Clay's Kentucky Practice, CR 4.11, Comment 6. When such a claim is timely presented, it necessarily requires proof of title, and that is an issue the statutes have declared beyond the ken of the county court and which must be referred to the circuit court, as was done in this case. Whether, in order to establish a valid title, the claimant must have new process issued is a question we are not called upon to decide. In any event, the circuit court has upheld Cooley's claim and the city has no standing to attack it.

■ The position of Roberts, who was involved in all three phases of the circuit court proceeding, is more complex. Still, the only justiciable issue or issues between Roberts and the city with respect to the lots condemned were those which related to the efficacy of the county court judgment. Insofar as Roberts' claim does not reach beyond the proceeds paid under the condemnation judgment (phase 1), the city has no interest. To the extent, therefore, that the adjudication of title in Roberts, even though it may be erroneous, has the effect of entitling him to the proceeds from the lots claimed by him, the city has no standing to attack it.

The issues between Roberts and the city center on phases 2 and 3 of the circuit court proceeding and are (a), on the city's appeal, whether Roberts was entitled under his CR 60.02 motion to have the county court judgment set aside, and (b), on Roberts' cross-appeal, whether he was entitled to a judgment declaring him the owner by adverse possession of the lots the city had acquired by deed from the mayor.

The chancellor's opinion is a fine example of scholarship, logic, and hard work. Only in one major respect do we find ourselves in disagreement with it, and that is its basic premise that because neither the city nor any other party formally denied the CR 60.02 allegations of Roberts and Cooley to the effect that when the condemnation proceeding began they were the owners by adverse possession of the lots claimed by them, they were entitled to prevail by default on those claims. Unless and until they established themselves as parties, CR 60.02 was not a remedy available to them, cf. Mulligan v. First Nat'l Bank & Tr. Co. of Lexington, Ky., 351 S. W.2d 59, 62 (1961), but once they were accepted, by default, as owners they came within the category of "unknown owners" previously designated as defendants in the original complaint, and were "parties" with CR 60.02 standing to attack the judgment.

The chancellor's theory was that the untraversed claims of ownership by Cooley and Roberts opened the door for them to litigate the CR 60.02 grounds for relief from the judgment. Though he made no finding of fraud, he found that there were enough indicia of their claims of ownership which were or should have been known to the city that the failure to join them as parties to the condemnation proceeding unfairly denied them a reasonable opportunity to litigate those claims. He therefore concluded that they were entitled to have the condemnation judgment set aside (so as to litigate, principally, the issue of compensation). Presumably in this connection, though we do not so decide, ground (6) of CR 60.02, "any other reason of an extraordinary nature justifying relief," was an appropriate basis for this conclusion.

■ It is our opinion, however, that the absence of some sort of formal denial of the CR 60.02 averments and affidavits to the effect that Cooley and Roberts were the owners of the property by adverse possession did not result in validating their claims by default.

CR 43.12 provides as follows: "When a motion is based on facts not appearing of record the court may hear the matter on affidavits presented by the respective parties, but the court may direct that the matter be heard wholly or partly on oral testimony or depositions." Although CR 6.-04(2) places restrictions on the time for filing counteraffidavits, there is nothing in the Rules to suggest that the absence of a counteraffidavit entitles the movant to prevail by default. To the contrary, the necessary import of CR 43.12 is that it lies within the discretion of the trial court to direct the manner in which the factual basis for the motion will be determined. See Underhill v. Thomas, Ky., 299 S.W.2d 633, 634 (1957), as follows (emphasis added):

> "Appellants urge that no response or answer was filed on behalf of the appellee; hence, they were entitled to the relief sought by default. The petition, as amended, was *the equivalent of a civil motion under CR 60.02(6)* to set aside the criminal judgment . . . . A motion is not a pleading . . . No pleading is necessary to give a party the right to oppose a motion . . . . . The movant cannot obtain the relief sought without meeting the burden of establishing to the satisfaction of the court that relief should be granted in accordance with recognized coram nobis principles. *It was unnecessary to respond in writing to the motion.*"

■ So the county court conducted a hearing on the motions of Cooley and Roberts. Had they asserted no more than a right to the proceeds theretofore paid into court by the condemnor, the city would not have been an adversary party and there

might very well have been no conflict to be transferred to the circuit court under KRS 416.070. But since they had to establish their title in order to get into position to litigate their CR 60.02 grounds, the city in defending the judgment had standing to dispute their claims. Thus arose a title conflict that was transferable, and was transferred, to the circuit court under KRS 416.070. In substance, the threshold issue in phase 2 of the circuit court proceeding (the CR 60.02 appeal) was the same as the phase 1 issue. Was Roberts, at the time the condemnation proceeding was instituted in the county court, the owner by adverse possession of the lots claimed by him?

 For the purposes of phases 1 and 2 of the litigation the chancellor concluded that Roberts had established his title through the failure of anyone to controvert the CR 60.02 allegations of ownership. He therefore made no specific findings of fact on the issue of adverse possession except in that portion of his opinion dealing with phase 3, wherein Roberts claimed title to other lots which had been conveyed to the city by the mayor. However, his findings and conclusion that Roberts had *not* acquired title by adverse possession to the latter lots necessarily force the same findings and conclusion with respect to the lots condemned, because they all lay together within the perimeter of what Roberts sought by his evidence to prove he had held in adverse possession.

To be specific, the condemned lots claimed by Roberts were Lots 2, 4, 14, 16 and 24 of Block 4 and Lots 1, 17 and 21 of Block 5. The purchased lots claimed by him were Lots 6, 12, 18, 20 and 22 of Block 4 and Lots 3, 5, 7, 9, 11, 13, 15, 19 and 23 of Block 5. The findings pertaining to the latter lots include the following recitations:

"Neighbors who testified herein knew the Roberts family, and later Gilbert, used property behind their house, but the witnesses do not agree as to the extent of the holdings. Nor do the witnesses agree as to fencing. But is seems cer-

tain the entire claim (Lots 1 to 23, Block 5, lots 2 to 24, Block 4) was not lived upon or fenced, nor was this entire area notoriously held or claimed. It would appear rather that this large area was used, rather than possessed."

It is clear from the findings, conclusion and opinion that on the question of adverse possession there was and is no basis for differentiation between the lots condemned by the city and those it acquired by purchase. As a matter of law, if the finding of no adverse possession with respect to the purchased lots is sustainable the same finding must follow with respect to the condemned lots. The burden of proof lay upon Roberts. Certainly his evidence of adverse possession was not sufficient to force a finding in his favor.

Through transfer of the title issue to the circuit court pursuant to KRS 416.070 Roberts was provided an ample opportunity to litigate his claim in accordance with due process. Having failed to establish his claim of ownership, he has no standing to attack the condemnation judgment. By parity of reasoning, neither does he have any standing to attack the purchase transactions between the city and the mayor. He simply has no title to be quieted or upon which the city's deeds could possibly cast a cloud. As to him, therefore, whether the deeds are void is irrelevant.

Lest it appear that Roberts is defeated by a technicality, it should be recognized that the same result would be reached if we held that as a mere *claimant* of the property being condemned he came within the ambit of "unknown owners" and therefore had standing to challenge the judgment under CR 60.02. In either event KRS 416.070 obliged the county court to pass the merits of the title claim to the circuit court, and his failure to succeed in establishing his ownership in that forum really moots the question of whether the city should have made him a party in the first instance.

 To sum up our conclusions, we are of the opinion that (1) Cooley, having

failed to appeal from the order of the county court overruling his CR 60.02 motion, cannot attack the county court judgment, but the city has no standing to contest his claim to the proceeds paid into court; (2) Roberts, having failed to establish a valid ownership interest, has no standing to attack the county court judgment or the city's deeds, but insofar as the judgment under review may be construed as entitling him to the proceeds of the condemned lots claimed by him the city has no standing to appeal. To the extent that the judgment is not clear in the latter respect it may be amended.

The judgment is affirmed in part and reversed in part on the direct appeal and affirmed on the cross-appeal, with directions that it be revised in accordance with this opinion.

PALMORE, C. J., and MILLIKEN, OSBORNE, REED, STEINFELD and STEPHENSON, JJ., sitting.

All concur.